Thank you, Justice Gregory. I won't go on and on. I said most of the arguments in the other one. Frankly, I don't think it would be appropriate to go through my arguments about the other defendants when I'm only facing a different appellee right now as to Boston Globe. But in concluding that Mr. Blankenship has failed to produce clear and convincing evidence of actual malice, the district court failed to view the record as a whole in light most favorable to my client with respect to Boston Globe. And what's that record? The evidence shows that the copy editor, what happened was, is, and you know this, AP article comes down. Usually these news organizations take the AP article and they just reprint it. And here, somebody inside Boston Globe, a copy editor, gets the AP article and decides to add words to it. And what's the words he adds to it? Which, by the way, were in violation of Boston Globe's ethics policy. He adds the words convicted felon to the AP story. This was defamation and, you know, what the evidence showed is that Daniel Coleman, the night shift actually, I thought he had authority under the arrangement with AP to do edit for their own purposes of publication. And what he did is if you read the whole clause, or at least a broader language of the clause, the AP language was, at least in my judgment, pretty awkward. Ex-baron, I know we use a lot of adjectives, and what he basically did is separated it to try to get the same meaning. It looked to me that way. But the proof of the pudding in that case is the Boston Globe did do an investigation into that and they concluded it was an honest mistake. And that's the only evidence we have about that. Let me just go through a little bit of the evidence, Your Honor. I certainly understand what you're saying. But with respect to what the AP's policy is, I, I, that should not control you. I'm talking about AP's policy. AP had an arrangement with the Globe and the Globe was allowed to use AP articles and I thought there was a suggestion that the Boston Globe was free to edit it. But I'm, you can correct me if I'm, if the record doesn't show that. The evidence we presented shows that the Boston Globe itself has a policy, ethics policy, that requires editors to confirm that any changes made by the paper to an AP wire story are true and accurate. So there's, right, there's, it's not an automatic where, where the Boston Globe's folks can make these changes. And for this, for this situation in particular, prior to what we call a libelous revision, the Boston Globe had published at least three articles correctly reporting Don Blankenship's misdemeanor conviction. And so, again, we'd like to, frankly, we'd like to get the copy editor into court. We were, we tried to get him. We couldn't get him. They, in, did you notice his deposition? Did we try and get the copy? All right, we tried to get the copy editor. Did you notice his deposition? Yes. We noticed his deposition. I'm going thirdhand here. And why couldn't you take it? I don't want to say, misrepresent anything. He was, he was, he, we were told he was unavailable and possibly sick. We had limited time in which to get it, and we were fighting a number of things in terms of the total number of depositions we could even get in this case. So we took his... But given how important his testimony wouldn't have been, why wouldn't you have asked for an extension of the time in order to conduct that deposition? Your Honor, that's a brilliant question. And... But you did a 30B6. And the 30B6, as you know, gets the testimony of the corporation. A person, everything from the corporation, of course, is hearsay. Corporations don't do much speaking. And so we get a 30B6 deposition, and the officer comes and testifies on the 30B6 as to what they found and concluded. And I could see that was the only evidence that related to this copy editor's work. Your Honor... Except the only way we could get to the copy editor's intent is if you somehow talk to the copy editor. Can I let my partner talk about that deposition scenario and why we didn't get the copy editor? Well, since... Does Niemeyer ask the question and we're interested? Yes. Thank you. Thank you, Justice Gregory. This gentleman has far more knowledge on that situation than I do. Your Honors, my... For the record, would you... My name is Jeremy Gray. Mr. Gray, go ahead. It might be easier when you're talking to remove your mask unless you're against it. No, no, no. Just while you're talking. I don't want to make it inconvenient for you. We were told by the Boston Globe and by their 30B6 deposition that this witness had no recollection of these events. So we made the decision in the context of this case where we had a limited number of depositions that we could take not to take his deposition. That to me is a little bit different story. In other words, you made the decision not to take it because he was noticed and asked for and then at some point the 30B6 witness told us that he didn't remember. The unfortunate consequence is that we now have no evidence about his mental state except the investigation conducted by the Globe under the 30B6 and that testimony basically said they concluded it was an honest mistake. Now, do we have anything to contradict that? Your Honor, they concluded he couldn't recall. I mean, the Boston Globe... Yeah, but the Globe, the corporation said they concluded it was an honest mistake. That was a corporate testimony. Correct. That was... And his testimony was basically, I don't recall, and that was hearsay. Correct. But that was what they basically... In other words, the Boston Globe concludes that it was an honest mistake. But my point is it doesn't matter how you concluded that it was an honest mistake and the individual who was involved, the only evidence you have is that indirect evidence that says he didn't recall. So is that clear and convincing evidence that he deliberately intended to mislabel the crime in this case as opposed to clarifying the phrase, which I think benefited from the change except for he used felon instead of criminal or whatever. But he did clarify an awkward phrase in the AP report. But my biggest point is I was looking for some evidence of his mental state, subjective state of malice. And I didn't see... You can point me to it. Understood, Your Honor. But we did get from the PMK that the fellow said he doesn't remember. And let's see what a jury says about what he remembers or doesn't remember when we bring him in in front of a jury, especially since he violated... Summary judgment and you have to come forward with the evidence you propose to put in. And if you fail in that effort, then the summary judgment will be entered against you. We submit we created a material issue of fact on actual malice with respect to even the Boston conflicting evidence. The conflict, the ultimate conflict on everything on this particular copy editor, what is the conflicting evidence was whether there was a possibility of actual malice? I want to know what the evidence was that was introduced about him other than what we just discussed here. Well, I'm going to talk about what we discussed and add a few things to it. If I may, Your Honor, one, he violated the company policy by changing this article in the lead up to the primary election. Two, he doesn't remember why he did it or if he did it, apparently. Three, the record which we did submit shows that there are prior news stories from that very news organization that show that Don Blankenship was a misdemeanant and four, I believe company policy at Boston Globe was before you make a change to to an article, you speak to a higher up, you speak to colleagues and you also check what the actual whether it's true or false or not. And, you know, this goes to another legal issue, frankly. All of those facts fall right within the heart statement. The Supreme Court's heart statement, the failure to investigate, the failure to do this, the failure to do that, do not does not amount to sufficient evidence to show malice. Your Honor, Hart and Anderson said all reasonable inferences in favor of the non-movement, in favor of non-movement. Credibility should be determined by a jury. There were no reasonable inferences with respect to, I'll just focus on this case, with respect to Boston Globe, Your Honor. We submit this case should be submitted to a jury. I agree with you. I don't disagree that this is a a harder lift than what I was arguing in the last oral argument. And but I would say at the end day, Your Honor, I have and we have and the courts have the law has and our U.S. Constitution has great faith in the people, great faith in the people. The people who, frankly, in some of these arguments today, not coming from the court, I think we're given short shrift. And I have great faith in the people. The people decided, as I said, Don Blankenship's not a felon. They understand the difference between felony and misdemeanor. And that was under far more difficult circumstances, frankly. I appreciate your argument. I'm gonna let you continue, but I just want to you said twice. But I just want that when you said that these other people, yes, there was a jury of his peers, but that's a special group of people because they sat through a trial and were instructed on the law by the court. And certainly they know that it was not a felony. But so you do have to put some context to those people who made it because they were everybody didn't get instructed by a misdemeanor versus a felony. But to your point, instructed about misdemeanor and felony. I thought the jury was given four counts, some SEC counts, which were felonies and this conspiracy count, and they convicted him of the conspiracy count. Is there any evidence that they decided whether it was a felony or misdemeanor? Your Honor, there were three counts. There are four counts, three felonies, one misdemeanor. So I'm going to say, Your Honor, do it on the basis that counts were totally different types of claims. They convicted him of what the proof established, and they said he conspired to violate the mine rules. And it turns out that's a misdemeanor. But I don't think the jury was told that or decided that it wasn't relevant. The jury just what was relevant is there is a crime alleged and they convicted him of the crime. Jury decided Don Blankenship was not a felon. And Justice Gregory, to your point, in front of a reasonable jury, we will be giving the reasonable jury all of those instructions and to help the reasonable jury decide why being called a felon is far worse than being called a misdemeanor. So in closing, Your Honors, again, I want to thank you very much for your time. This is a high honor and privilege for me and my client to be able to argue in front of and speak in front of all of you today. Me coming out here from California, it's a little warmer today and love this city here. But at the end of the day, in this day and time, and I said it before, of ongoing questions about the strength of our elections, ongoing questions about the control and manipulation of candidates, major offices, U.S. Senate, questions about media truth, sometimes questions about biased courts. It is time to let the people decide. We believe that everything we're asking for is directly in line with the concepts and the provisions and the holdings of major United States Supreme Court cases. We again ask that, respectfully, that this case be reversed and remanded as well, along with the other claims. Thank you. Thank you, Mr. Early. Mr. Albano. May it please the Court, my name is John Albano. I represent Boston Globe Media Partners. I will be careful not to repeat anything that's been said before. But I would like to begin by summarizing some things that I think people actually agree on in the Globe case. Every time I hear a case, everyone agrees that the article at issue in this case came two weeks after Mr. Blankenship lost the primary, a primary that he says he lost because of 100 some articles that mistakenly called him a felon. The Boston Globe was not among those 100 articles that were published. So we sort of came onto the scene, I would say, two weeks after the car accident occurred. And there's no dispute that on the evening of May 21st, the Globe received a AP wire service article that Mr. Coleman edited that article, and that the article he looked at in its original form had two statements that I would suggest are relevant here. The first was an introduction that described Mr. Blankenship as a convicted ex-coal baron, no reference to whether it was a felony or a misdemeanor. But when the article returned to that subject, the conviction, it described Mr. Blankenship as spending a year in federal prison for violating safety regulations in a 2020 mine explosion that killed 29 miners. There's no dispute that Mr. Coleman edited that and made a mistake. He edited it to say that the conviction was a felony, as we know it was not. It was a misdemeanor. The district court, I would suggest, correctly said, after two years of discovery, okay, we know there was a mistake. Your opponent suggests that that edit to link his conviction for violation of mine regulations is also false because he was convicted of conspiring to violate mine regulations, but he was not convicted for the mine violation that led to the death of the miners. That was a ventilation system that was somewhat, there was some dispute about all that. And if I follow that point correctly, Your Honor, there's two related points. The line I read was from the original AP article that Mr. Blankenship did not sue on. The line I just read that said, he spent a year in federal prison for violating safety regulations in a 2020 mine explosion that was not sued upon. Mr. Blankenship has voiced displeasure with the correction that was later published by the Globe. But as the district court pointed out, he didn't sue on that correction. He could have sued on the correction. I would say that the correction is not materially different than the AP story that was not sued on, not materially different than the first sentence in the affirmance of Mr. Blankenship's convictions, which said- Can I ask you- Yes, yes. The copy editor began with an AP story and edited it. Right. What, explain to me what the authority he had and the arrangement he had with AP to do that. Yeah, there is a contractual arrangement with the AP and Mr. Dahl was our 30B6 witness. He explained with others as well, New York Times Service and others. You can get their stories and the agreement allows you to edit them. And it happens- Was there post conditions on that editing? No, your honor. Not in the agreement itself, which was an exhibit. But the deposition is in its entirety in the record. And Mr. Dahl did get the chance to explain. They get about 200 stories that potentially come in the budget. They pick from the wire services, 20 of them or so. And they cut them down to fit in the paper. So they are always changed. They are always edited. This particular article appeared on page two. There's an example in the record, but it's used for wire service stories, the nation it's called. It's not local stories. Globe is a regional paper. This is where the wire service stories go. They get these wire service stories and they are edited. Now, was there- Mr. Coleman made a mistake. I mean, there is no evidence in the record though that Mr. Coleman or the Globe had any personal hostility or animosity towards Mr. Blankenship. After all, it would have been odd for them to wait until after the primary was over to make this mistake. As counsel pointed out, they had previously accurately reproduced AP articles that described it as a misdemeanor. So there's no reason to think, well, they'll wait until after he loses the primary to join the campaign of calling Mr. Blankenship a felon. There's not even any evidence that Mr. Coleman knew who Mr. Blankenship was before he read that article. I was preparing for this. I didn't grow up in Boston. I don't feel like I need to defend the provincialism that happens up there. You would need to have some evidence that Mr. Coleman knew who Mr. Blankenship was. So there's none of that. Was there any evidence in the record that Mr. Coleman was involved in the prior stories? No, there is not. There is no evidence. It would have been a different issue, right, if he had passed on earlier stories. We don't know if he saw them or if he did see them. Did he take note of the terminology misdemeanor or felony? What the plaintiff says is the district court ignored the cumulative evidence. In the district court, he refused to double count or accept speculation because what the evidence was, was that Mr. Coleman made a mistake and that we had stories in our archives that correctly reported that it was a misdemeanor. Well, that's right out of the Solomon case, because the New York Times had articles in their files that proved that certain points in the advertisement were false and the Supreme Court said that is not enough. You need to show that people in the editorial chain were aware of those prior publications and there's no such evidence of that here. The plaintiff says, okay, here's the second point. He failed to check the archives. That's just another way of saying Mr. Coleman made a mistake. He should have checked the archives. Well, yes, but that's kind of the nature of making a mistake. If you think you've understood what an article says and have correctly edited it, that is a negligence is not sufficient for actual malice. Of course, we want to answer any additional questions that the court might have, but I would submit that this case is, well, I shouldn't comment on a case I'm not a part of. This is a straightforward case in which a reporter made a mistake. There is no evidence to the contrary and the district court should not be faulted and, in fact, should be affirmed for ruling that there was not sufficient evidence for a reasonable jury to decide that Mr. Coleman or the Globe knew that that article was false or entertained serious doubts about its truth and certainly not by clear and convincing evidence, and for that reason, we'd ask the judgment to be affirmed. Thank you, Mr. O'Malley. Thank you. Mr. Earle, you have some time reserved. Thank you, Your Honor. I won't be long. I do want to read briefly the retraction and why we did take umbrage with it. Because of an editing error, I'm reading now from the Boston Globe, June 14, 2019. Because of an editing error, a May 22, 2018, story about former coal executive Don Blankenship of West Virginia referred incorrectly to his criminal case. He was convicted of a misdemeanor for his role in connection with a deadly 2010 mine disaster. The Globe regrets the error. We took umbrage with the in-connection words, and I pretty much explained why the last go-round. That's why I asked the question. So part of your case is that because they connected the role, as Judge Nehemiah said, it is not connected to the actual explosion of 29. So that's a part of your case as well? That's exactly part of the case, Your Honor. And I'm just going to say one thing in closing. Just to be fair with that report, I think that picks up the AP language that was pre-existing and has not been challenged. But quite apart from that, the investigation of Mr. Blankenship following the mine disaster was prompted by the mine disaster. And he was convicted of conspiring to, it was numerous, I don't remember how many violations over the years, and with emails where he directed his subordinates not to address the problem. So the mine had systemic problems. But I think you're fair in saying that the particular problem causing the accident may not have been listed among those. I think it was something with the ventilation systems, I recall. So it's related, but it's not related. It's not directly causative. Thank you, Justice Nehemiah. I'm just going to close by saying one other thing. It's our understanding, and like I said, hopefully we get in front of a jury and we'll know it for sure, but that nobody has ever been elected to the United States Senate who was convicted of a felony. And with that, I've got nothing further to say. Thank you so much. Thank you, Mr. Earley, Mr. Albano. Thank you for your arguments. Like I said, we'd love to come down and shake your hand in our normal tradition of the Fourth Circuit, but under the circumstance, we cannot. But know that we appreciate your arguments and your help on these cases. We wish that you'll be safe and stay well. Take care. Bye-bye.
judges: Roger L. Gregory, Paul V. Niemeyer, Patricia T. Giles